UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

NICHOLAS J. DIGONNO,
Plaintiff,

vs.

CITY OF HAMILTON,
Defendant.

Case No. 1:15-cv-432
Litkovitz, M.J.

ORDER

Plaintiff Nicholas Digonno brings this action against defendant City of Hamilton, Ohio, alleging violation of his constitutional rights under 42 U.S.C. § 1983 and state law negligence related to defendant's demolition of property owned by plaintiff. This matter is before the Court on defendant's motion for summary judgment (Doc. 29), plaintiff's response in opposition (Doc. 33), and defendant's reply memorandum (Doc. 34).

I. Facts

In December 2009, plaintiff became the owner of real property located at 921 Dayton Street in Hamilton, Ohio. (*See* Doc. 33 at 34, Exh. 2, Resolution No. R2010-3-16). Structures on the property included a house and a garage. (*See* Doc. 1 at ¶ 8; Doc. 7 at ¶ 8; Doc. 33 at 35, Exh. 3, Letter to plaintiff from Hamilton, Ohio Department of Public Health dated January 6, 2010). On January 6, 2010, defendant's Department of Public Health sent plaintiff a letter advising him the "property has been a nuisance for years." (Doc. 33 at 35). This letter informed plaintiff that the following conditions at the property made it a nuisance: (1) raccoons, insects, and rodents had infested the structure; (2) the rear chimney was leaning and posed a hazard; and (3) the windows/doors of the house and garage were not secured. (*Id.*). The letter informed plaintiff that he was required to submit a proposal to rehabilitate or demolish the structure within thirty days. (*Id.*). The letter informed plaintiff that the required proposal "shall include all

repairs needed to bring the property up to the City of Hamilton housing code. It shall also include[] painting and repair to the exterior of the house and garage, chimney repair, windows, concrete repair of the front steps and walkway and proper repairs to all mechanicals[.]" (*Id.* at 36).

On March 10, 2010, defendant found the property to be a public nuisance and authorized the filing of a public nuisance action in the Butler County, Ohio Court of Common Pleas. (Doc. 33 at 34, Exh. 2). Defendant moved for summary judgment in the nuisance action on July 27, 2010. Defendant stated in its motion that the subject property of the action "consists of [a] vacant two and a half story structure and a detached garage which has been vacant and without utilities since September of 2006." (Motion for Summary Judgment filed July 27, 2010 in Butler County Court of Common Pleas Case No. CV 2010 04 1492, at 2).[1] Defendant attached to its motion the affidavit of Teresa Jones, Public Health Sanitarian for the City of Hamilton, Ohio. (Affidavit of Teresa Jones, Exh. 1 to Motion for Summary Judgment filed in Case No. CV 2010 04 1492). Ms. Jones described in detail the inspection and citation history of the property. (*See generally id.*). As to the garage, Ms. Jones attested: "The three-car detached garage at the rear of the Property has also had to be secure[d] by the City of Hamilton as the owner has let the windows and doors become broken and unsecured." (*Id.* at ¶ 6). Ms. Jones attested that on May 24, 2006, defendant issued a citation because, *inter alia*, the garage needed to be painted. (*Id.* at ¶ 22). On August 14, 2006, defendant issued another citation because, *inter alia*, the "garage windows and soffits [were] in bad repair." (*Id.* at ¶ 23). On June 22, 2007, defendant issued an order "to paint and repair the house, trim, siding, porch, soffits and garage." (*Id.* at ¶ 31).

---

[1] This document is available online from the Butler County Clerk of Courts Record Search page at pa.butlercountyclerk.org/eservices/home.page.2. The Court may take judicial notice of documents filed in the state court nuisance action. *See Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980) ("Federal courts may take judicial notice of proceedings in other courts of record.") (quoting *Granader v. Pub. Bank*, 417 F.2d 75, 82-83 (6th Cir. 1969)).

Defendant also attached to its motion for summary judgment in the nuisance action affidavits from neighbors living next door to the property. Neighbor Angela Wallace attested: "I have seen people stealing, or at least what appears to me to be stealing, things from the Property, especially the garage. I also believe that persons have been defecating in the garage." (Affidavit of Angela Wallace, Exh. 2 to Motion for Summary Judgment filed in Case No. CV 2010 04 1492, at ¶ 8). Neighbor Kim Winters attested: "The Property has an awful odor that emanates from it. Both the house and the garage smell badly. When I am working in my yard, or mowing the grass I hold my breath when I pass under the windows." (Affidavit of Kim Winters, Exh. 3 to Motion for Summary Judgment filed in Case No. CV 2010 04 1492, at ¶ 6). Ms. Winters further attested:

> I have also seen people peering into the garage at the Property. It appears the garage is full of junk. There are times that the garage door will be standing open, and I have seen people enter and remain inside for a while. When I get the opportunity, I try to keep the garage door firmly closed. I feel safer if the door is shut.

(*Id.* at ¶ 11).

Common Pleas Judge Michael Sage referred the motion to a magistrate. The nuisance action was scheduled for a bench trial on April 14, 2011. (*See* Doc. 29-1 at 1, Exh. A, April 25, 2011 Entry of Magistrate Erin G. Rosen). Before trial, the parties stipulated that "the subject property located at 921 Dayton Street, Hamilton, Ohio, was a public nuisance pursuant to [Ohio Rev. Code] § 3767.41" and the matter proceeded to trial only as to the issue of abatement. (*Id.*). The state court magistrate entered the following order to summarize the result of that trial:

> After presenting testimony, the parties agreed to allow [Mr. Digonno] six (6) months to complete an agreed upon checklist of items. If at the end of the six-month time period, [Mr. Digonno] has completed the entire checklist, then a final occupancy date will be set. However, if at the end of [the] six-month period [Mr. Digonno] has failed to complete the checklist in its entirety, [Mr. Digonno] agrees

that [the City] will be permitted to proceed with abatement by demolition of the premises and the costs will be assessed to [Mr. Digonno].

(*Id.*).

On May 3, 2011, the state court magistrate entered an order that required plaintiff to complete the following repairs to the property by November 5, 2011:

1. Make Building Safe and Secure.
    a. This is to include but is not limited to:
        i. cleaning up the yard,
        ii. post no trespassing signs,
        iii. board up or replace all broken windows,
        iv. make sure all doors are secured
        v. Board up or secure the southeast corner of house that is damaged
        vi. The structure should be in a condition that no unwanted persons or animals can gain access.
2. Obtain Certificate of Appropriateness and Building Permit to reroof and repair gutters.
3. Reroof and Repair Gutters.
    a. This is to include but is not limited to:
        i. Demolition of chimney
        ii. Reroof
        iii. Repair or replace the gutters,
4. Repair the Structural Damage to the South East Corner of the Building.
5. Repair or Replace All Windows
6. Repair or replace All Doors.
7. Repairing Siding and Paint

(Doc. 29-2 at 1-2, Exh. B, May 3, 2011 Entry of Magistrate Erin G. Rosen). The order further stated that "[i]f any portion of the above work is not completed in its entirety by [November 5, 2011, Mr.] Digonno agrees that [the City] will be permitted to proceed with abatement of the nuisance by demolition of the premises." (*Id.* at 2). On August 9, 2011, Judge Sage modified the magistrate's order such that the deadline for completing the required repairs was extended to April 1, 2012. (Doc. 29-3 at 1, Exh. C, August 9, 2011 Entry of Judge Michael J. Sage).

On May 1, 2012, Judge Sage held a hearing on the City's motion to permit demolition of the property. (Doc. 33 at 19, Exh. 1, May 1, 2012 Hearing Transcript on Motion to Demolish

921 Dayton Street). At the hearing, plaintiff argued that the public nuisance as defined by statute had been abated by the partial repairs plaintiff had completed. (*See id.* at 24). Plaintiff contended that because the nuisance had been abated, "you can't demolish it." (*Id.*).

In a subsequent May 11, 2012 order permitting demolition, Judge Sage noted that the parties previously stipulated the property was a public nuisance and the court allowed Mr. Digonno until April 1, 2012 to complete the required repairs. (*See* Doc. 29-4 at 1, Exh. D, May 11, 2012 Entry Permitting Demolition). Judge Sage also noted Mr. Digonno's April 14, 2011 agreement that the City would be permitted to proceed with abatement of the nuisance by demolition "if any portion" of the required repairs was "not completed in its entirety." (*Id.* at 2). Judge Sage found that because the required repairs were not completed by April 1, 2012, the City was "permitted to demolish the structure located at 921 Dayton Street, Hamilton, Ohio." (*Id.*).

Plaintiff appealed the May 11, 2012 order to the Twelfth District Court of Appeals. On appeal, plaintiff argued that Judge Sage erred by: (1) "ordering completion of a checklist of items more extensive than that necessary to abate[] the public nuisance"; (2) "not ruling whether the public nuisance was abated prior to ordering the demolition of the property"; and (3) "ordering the demolition of [the] property as the method of abatement." (Doc. 29-5 at 5, Exh. E, Opinion). On January 22, 2013, the Twelfth District overruled plaintiff's objections and affirmed the demolition order. (*Id.* at 9; Doc. 29-5 at 1, Exh. E, Judgment Entry).

On June 28, 2013, Judge Sage granted the City's post-judgment motion for demolition and costs. (Doc. 29-6 at 1-3, Exh. F, Post Judgment Entry for Demolition and Costs). Judge Sage ordered "that the structures, located at 921 Dayton St., City of Hamilton, Ohio, be demolished, and that the lot be cleared." (*Id.* at 1). Plaintiff did not appeal from this order. (*See*

Docket Sheet for Case No. CV 2010 04 1492). Defendant demolished the house and the garage on July 1, 2013. (Doc. 1 at ¶ 8; Doc. 7 at ¶ 8).

## II. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), a grant of summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Satterfield v. Tennessee*, 295 F.3d 611, 615 (6th Cir. 2002). The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Satterfield*, 295 F.3d at 615; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Little Caesar Enters., Inc. v. OPPC, LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The trial court need not search the entire record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

## III. Resolution

Plaintiff's complaint in the instant action raises three claims. Plaintiff's first count alleges defendant violated the Due Process Clause of the Fourteenth Amendment to the United

6

States Constitution by demolishing the house and garage. (Doc. 1 at ¶¶ 16-20). Plaintiff's second count alleges defendant's actions constitute a taking of plaintiff's property without just compensation in violation of the Fifth Amendment. (*Id.* at ¶¶ 21-26). Plaintiff's third count alleges defendant's actions constitute negligence under Ohio law. (*Id.* at ¶¶ 27-30).

**A. The Takings Clause claim is not ripe.**

As an initial matter, the Court must determine whether plaintiff's Takings Clause claim is ripe. The Court may consider this issue on its own motion. *See Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) ("The ripeness doctrine is 'drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction,' but, even in a case raising only prudential concerns, the question of ripeness may be considered on a court's own motion.") (quoting *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 (1993)).

"Applicable to the States through the Fourteenth Amendment, the Takings Clause of the Fifth Amendment provides that private property shall not be taken for public use, without just compensation." *Wayside Church v. Van Buren Cty.*, 847 F.3d 812, 817 (6th Cir. 2017) (quoting *Wilkins v. Daniels*, 744 F.3d 409, 416 (6th Cir. 2014)) (internal quotation marks omitted). "As its text makes plain, the Takings Clause does not prohibit the taking of private property, but instead places a condition on the exercise of that power." *Id.* (quoting *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 536 (2005)) (internal quotation marks omitted). "The Takings Clause's purpose is 'not to limit the governmental interference with property rights *per se*, but rather to secure *compensation* in the event of otherwise proper interference amounting to a taking.'" *Id.* (quoting *Lingle*, 544 U.S. at 537). "Consequently, 'a State does not violate the Takings Clause until it refuses to compensate the owner.'" *Id.* (quoting *Wilkins*, 744 F.3d at 417) (internal quotation marks omitted). "Such compensation is not required to be 'paid in advance of, or

contemporaneously with, the taking.'" *Id.* (quoting *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194 (1985)). "Therefore, a takings claim is not ripe 'unless or until the State fails to provide an adequate postdeprivation remedy for the property loss.'" *Id.* (quoting *Williamson Cty. Reg'l Planning Comm'n*, 473 U.S. at 195).

"A federal court may hear a takings claim only after: (1) the plaintiff has received a final decision from the relevant government actor; and (2) the plaintiff has sought compensation through the procedures the State has provided for doing so." *Id.* at 818 (quoting *Wilkins*, 744 F.3d at 417) (internal quotation marks omitted).

"In Ohio, a property owner alleging a physical or regulatory taking must file a mandamus action in state court to compel public authorities to institute appropriation proceedings." *Cornerstone Developers, Ltd. v. Sugarcreek Twp.*, No. 3:15-cv-93, 2015 WL 6472260, at *4 (S.D. Ohio Oct. 27, 2015) (citing Ohio Rev. Code §§ 163.01-163.62). "This procedure has been deemed 'reasonable, certain, and adequate' for seeking just compensation." *Id.* (quoting *Coles v. Granville*, 448 F.3d 853, 865 (6th Cir. 2006)). "Until the state appropriation proceedings are complete and the property owner has been denied just compensation, there is no constitutional injury, and a Takings Clause claim is not ripe." *Id.* (citing *River City Capital, L.P. v. Bd. of Cty. Comm'rs, Clermont Cty.*, 491 F.3d 301, 306 (6th Cir. 2007)).

Here, plaintiff's complaint fails to allege and plaintiff has not presented any evidence to show that he has pursued state appropriation proceedings prior to raising a takings claim in this lawsuit. Accordingly, plaintiff's takings claim will be dismissed without prejudice on the ground that it is not ripe for resolution in this Court.

### B. The Due Process claim is barred by res judicata.

In considering preclusion doctrines, "[f]ederal courts must give the same preclusive effect to a state-court judgment as that judgment receives in the rendering state." *Abbott v. Michigan*, 474 F.3d 324, 330 (6th Cir. 2007) (citing 28 U.S.C. § 1738). Therefore, in determining whether the present case is barred, the Court looks to the state law of Ohio. "Under Ohio law, the doctrine of res judicata consists of the two related concepts of claim preclusion, also known as res judicata or estoppel by judgment, and issue preclusion, also known as collateral estoppel." *Ohio ex rel. Boggs v. City of Cleveland*, 655 F.3d 516, 519 (6th Cir. 2011) (citation and quotation marks omitted). Defendant contends that only claim preclusion is applicable here. (*See* Doc. 29 at 5).

As to claim preclusion, the Ohio Supreme Court has held that a "valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Grava v. Parkman Twp.*, 653 N.E.2d 226, 229 (Ohio 1995). Relying primarily on this holding, the Sixth Circuit has stated that claim preclusion under Ohio law has four elements:

> (1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action.

*Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir. 1997) (citation omitted).

Here, the elements of claim preclusion are satisfied for plaintiff's federal due process claim. First, the Butler County Court of Common Pleas' May 11, 2012 entry permitting demolition was a "final appealable order" that constituted "a prior final, valid decision on the merits by a court of competent jurisdiction." (Doc. 29-4 at 1, Exh. D); *see Hapgood*, 127 F.3d at

493. Second, the parties to the instant action were the same parties to the public nuisance action in state court. Third, plaintiff could have raised his instant due process claim in the state suit. Plaintiff argued before both Judge Sage and the Twelfth District that demolition would be unlawful because the nuisance had been abated. (*See* Doc. 33 at 24, Exh. 1; Doc. 29-5 at 5, Exh. E). He could have raised his due process claim at that time. *See Hapgood*, 127 F.3d at 493. Finally, the current action raising a due process challenge to the demolition of plaintiff's property arises out of the same transaction or occurrence—i.e., the nuisance and demolition proceedings—as the state court action. *See id.*

Plaintiff argues that the instant action is not barred by principles of claim preclusion because: (1) "there was never a judicial finding that the property constituted a public nuisance at the time demolition was ordered"; (2) the instant action raises new facts because the property was no longer a nuisance at the time of demolition; (3) the instant action raises new facts and claims concerning the demolition of the garage; and (4) the instant action raises new facts concerning "the amount of time, effort, and money [plaintiff] placed into the repairs of the house."[2] (Doc. 33 at 5-12). These arguments are not well-taken. In essence, plaintiff's due process claim in this case is nothing more than a defense to the City's nuisance action which has been or could have been raised in the state court proceedings. *See Plassman v. City of Wauseon*, 85 F.3d 629, 1996 WL 254662 (6th Cir. 1996) (unpublished).

First, plaintiff argued before Judge Sage that the property was no longer a nuisance prior to entry of the demolition order. (*See* Doc. 33 at 24, Exh. 1). Plaintiff also raised the argument in the Twelfth District Court of Appeals that Judge Sage erred by not finding whether the property was still a public nuisance at the time of the demolition order. (*See* Doc. 29-5 at 5, Exh.

---

[2] Plaintiff additionally argues that res judicata does not bar this lawsuit because his Fifth Amendment takings claim could not have been raised in the prior litigation. (*See* Doc. 33 at 11-12). However, as explained above, plaintiff's takings claim is not ripe for review and the Court will not consider it further.

E). Thus, both Judge Sage and the Ohio Court of Appeals considered and rejected plaintiff's instant argument that the property did not constitute a public nuisance at the time demolition was ordered.

Second, plaintiff argues that because the property was no longer a nuisance at the time of demolition, this constitutes a new fact that makes application of res judicata inappropriate. As just noted, both Judge Sage and the Twelfth District Court of Appeals rejected plaintiff's argument that demolition was unlawful because the nuisance had been abated. While plaintiff's briefing on this point is cursory, to the extent plaintiff may be arguing that he undertook additional repairs to abate the nuisance between the time of these state court decisions and the July 1, 2013 demolition, plaintiff could have raised this argument in the state court by filing a motion to reconsider or in opposing defendant's post-judgment motion for demolition and costs. *See Hapgood*, 127 F.3d at 493. He did neither.

Third, plaintiff argues that the instant action raises new facts and claims concerning demolition of the detached garage, which plaintiff contends was not a subject of the state proceedings. The Court disagrees. Plaintiff was on notice in the state proceedings that the garage was a subject of the nuisance action. Defendant's January 6, 2010 letter advising plaintiff that his property was a nuisance informed plaintiff that the garage was not secured and that he was required to submit a proposal to paint and repair, *inter alia*, the exterior of the garage. (Doc. 33 at 35, Exh. 3). The motion for summary judgment that defendant filed in the state court proceedings stated that the subject property of the action "consists of [a] vacant two and a half story structure *and a detached garage* which has been vacant and without utilities since September of 2006." (Motion for Summary Judgment filed in Case No. CV 2010 04 1492, at 2) (emphasis added). Defendant attached to that motion three affidavits describing why the garage

11

was a nuisance. (*See, e.g.*, Jones Affidavit, Exh. 1 to Motion for Summary Judgment in Case No. CV 2010 04 1492, at ¶ 6 ("The three-car detached garage at the rear of the Property has also had to be secure[d] by the City of Hamilton as the owner has let the windows and doors become broken and unsecured."); Wallace Affidavit, Exh. 2 to Motion for Summary Judgment in Case No. CV 2010 04 1492, at ¶ 8 ("I have seen people stealing . . . things from the Property, especially the garage. I also believe that persons have been defecating in the garage."); Winters Affidavit, Exh. 3 to Motion for Summary Judgment in Case No. CV 2010 04 1492, at ¶ 6 ("The Property has an awful odor that emanates from it. Both the house and the garage smell badly.")). Further, the magistrate's April 25, 2011 order indicated the "subject property" (not just the house) was a public nuisance and stated that defendant would be permitted to "proceed with abatement by demolition of the premises" (not just the house) if plaintiff failed to complete the required checklist of repairs in its entirety. (Doc. 29-1 at 1, Exh. A). The magistrate's May 3, 2011 order also referred to the "subject property" and "demolition of the premises." (Doc. 29-2 at 1-2, Exh. B). Additionally, Judge Sage's June 28, 2013 post-judgment entry for demolition and costs ordered "that the structures, located at 921 Dayton St., City of Hamilton, Ohio, be demolished and that the lot be cleared." (Doc. 29-6 at 1, Exh. F). This post-judgment entry is a final order of the state court that plaintiff could have appealed to litigate claims concerning demolition of the garage, but he did not do so. (*See* Docket Sheet for Case No. CV 2010 04 1492); *Hapgood*, 127 F.3d at 493. Thus, demolition of the garage does not constitute a "new fact" or "new claim" to overcome application of res judicata.

Finally, the amount of time, money, and effort that plaintiff placed into repairs of the house is irrelevant unless plaintiff can show a constitutional violation that could not have been

raised in the state proceedings. However, as already explained, the due process violation plaintiff alleges in the instant action could have been raised in the state proceedings.

Based on the foregoing, plaintiff's due process claim is barred by principles of res judicata.

### C. The Court declines to exercise supplemental jurisdiction over plaintiff's negligence claim.

Because plaintiff's federal claims fail as a matter of law, the Court declines to exercise supplemental jurisdiction over the state law negligence claim. *See* 28 U.S.C. § 1367(c)(3) (providing a court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.").

## IV. Conclusion

Based on the foregoing, it is **ORDERED** that:

1. Defendant's motion for summary judgment (Doc. 29) is **GRANTED IN PART**;
2. Plaintiff's due process claim (Count 1) is **DISMISSED WITH PREJUDICE** as barred by principles of res judicata;
3. Plaintiff's takings claim (Count 2) is **DISMISSED WITHOUT PREJUDICE** because it is not ripe for review;
4. To the extent plaintiff's negligence claim (Count 3) is not barred by principles of res judicata, the Court declines to exercise supplemental jurisdiction over this state law claim and that claim is **DISMISSED WITHOUT PREJUDICE**; and

5. This matter is **TERMINATED** from the docket of the Court.

   **IT IS SO ORDERED.**

Date: 6/28/17

Karen L. Litkovitz
United States Magistrate Judge